IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| FAHEEM DAVIS, | ) |
| | ) |
| Plaintiff | ) 1:21-CV-00055-RAL |
| | ) |
| vs. | ) |
| | ) |
| | ) RICHARD A. LANZILLO |
| DR. MAXA, NP LESLIE, NP | ) Chief United States Magistrate Judge |
| SUTHERLAND, WELLPATH | ) |
| MEDICAL PROVIDER, | ) MEMORANDUM OPINION ON |
| | ) DEFENDANTS' MOTION FOR SUMMARY |
| Defendants | ) JUDGMENT |
| | ) |
| | ) |
| | ) IN RE: ECF NO. 36 |

MEMORANDUM OPINION

Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 is pending before the Court. ECF No. 36. For the reasons explained below, the motion will be GRANTED.[1]

**I.   Introduction and Procedural History**

Plaintiff Faheem Davis ("Davis"), an inmate currently incarcerated at the Pennsylvania State Correctional Institution ("SCI") at Frackville and formerly incarcerated at SCI-Forest, brought this *pro se* civil rights action against medical provider Wellpath and three Wellpath medical staff members, Dr. Maxa, Nurse Practitioner ("NP") Leslie, and NP Sutherland.[2] ECF No. 5. The complaint alleges that Defendants acted with deliberate indifference to Davis's serious medical needs in violation of his rights under the Eighth Amendment to the

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636. *See* ECF Nos. 6, 18.

[2] The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and may exercise supplemental jurisdiction over Davis's state law claims under 28 U.S.C. § 1337.

1

Constitution.[3] The Court later stayed this case pending Davis's receipt of certain medical test results that the parties agreed were potentially relevant to his claims. The Court held two more status conferences before lifting the stay on June 8, 2022. *See* ECF Nos. 30, 32, 33.

Defendants filed their pending motion for summary judgment on July 29, 2022. ECF No. 36. In accordance with Local Rule 56(B), Defendants' motion was accompanied by a concise statement of material facts and a supporting brief. ECF Nos. 37, 38. Under the Court's Case Management Order (ECF No. 39) and as directed by LCvR 56(C), Davis was to file a responsive concise statement of material facts and brief in opposition to the motion by August 29, 2022. When Davis had failed to do so by September 27, 2022, the Court issued an Order to Show Cause directing him to explain his failure or, alternatively, file his brief and responsive concise statement on or before October 18, 2022. ECF No. 40. The Order to Show Cause further advised Davis that his failure to respond may result in the Court dismissing his case based on his failure to prosecute. *Id. See also Reavis v. Aurandt*, 2022 WL 3920955 at *1 (W.D. Pa. Aug. 31, 2022). To date, Davis has failed to respond to the Court's Show Cause Order or to otherwise indicate that he wishes to proceed with this action.[4]

## II. Statement of Facts

### A. Davis's Complaint

In his complaint, Davis essentially alleged that Defendants' failure to diagnose him with a serious medical condition related to his reports of bowel issues constituted deliberate indifference to his medical needs. Davis alleged that he experienced severe abdominal pain

---

[3] The complaint was accompanied by the following exhibits: a July 21, 2020 Inmate Request to Staff Member, ECF No. 5-1, p. 2; Grievance No. 900251 and the Initial Review Response, *id.*, pp. 3-5; Grievance No. 904440 and Rejection Form, *id.*, pp. 6-7; Grievance No. 907637, *id.*, p. 8; and Lab Reports dated April 27 and July 8, 2020.

[4] Davis's last docket activity was the filing of his pretrial statement on July 8, 2022. As none of the Court's mailings to Davis's current address of record have been returned as undeliverable, the Court presumes he has received them.

2

during the early hours of April 23, 2020, and that NP Sutherland examined him later that morning, "ordered a urine sample, blood work, and an x-ray," and "informed [Davis] that he was ... constipated." ECF No. 5, pp. 2-3. Davis was then released from the infirmary because Sutherland allegedly "lied and stated that [Davis] 'said he felt better.'" *Id.*, p. 3. Davis alleged, however, that his pain persisted. He explains that throughout this time, he received examinations from NP Sutherland, NP Leslie, Dr. Maxa; underwent an ultrasound ordered by Dr. Maxa that yielded negative results; and was diagnosed with allergies and prescribed medication (Requip) for muscle tremors, which he stopped taking because of its ineffectiveness and side effects. Davis further averred that at each medical appointment, his request to be screened for cancer was denied, as was his request for an MRI at a December 8, 2020 appointment with NP Sutherland for "severe muscle tremors/spasms." *Id.* He also alleged that "he was never seen by the doctor" for the "muscle tremors, bleeding and abdominal pain" he complained of in an October 20, 2020 sick call slip and that he "has three abnormal CVC Count to date." *Id.* Finally Davis alleged that "he believes he has cancer," and "staff knows that to be a fact" but "refuse to offer [him] treatment options." *Id.*

### B. The Summary Judgment Record

Because Davis has failed to file a responsive concise statement of material facts, all facts included in Defendants' concise statement are accepted as undisputed to the extent they are supported by Defendants' accompanying exhibits and other materials properly included in the record. *See* LCvR 56(E). While courts may provide some leniency to *pro se* litigants when applying procedural rules, a *pro se* litigant may not ignore procedural rules. Compliance with LCvR 56 applies equally to *pro se* plaintiffs and those represented by counsel. *See, e.g., Peay v.*

*Sager*, 2022 WL 565391, at *1–2 (W.D. Pa. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 562936 (W.D. Pa. Feb. 24, 2022).

In support of their motion for summary judgment, Defendants have produced a record that includes over four-hundred pages of Davis's medical records. Their concise statement of material facts recounts Davis's relevant medical history in painstaking detail. In summary, the record shows that medical personnel examined Davis on fifty occasions between January 28, 2020 and December 29, 2021, when Davis was transferred from SCI-Forest to SCI-Frackville. This includes thirty-eight examinations in 2020 alone. This number does not include a mental health evaluation and two dental appointments that also occurred before Davis was transferred to SCI-Frackville. During this same timeframe, Davis underwent numerous medical tests, including ultrasounds, blood tests, and x-rays, was prescribed various medications for his reported symptoms, and was evaluated by consulting medical personnel. Every medical condition complained of by Davis or identified by a medical provider was treated by medication, diet, or other therapies. Prison medical staff consistently reviewed test results and treatment decisions with Davis. On one occasion, SCI-Forest medical personnel also reviewed Davis's lab results with his mother. Davis's medical records memorialize that he was hostile with medical staff and non-compliant with his medication. A June 6, 2022 Mental Health Contact Note reported that "he said he may be a hypochondriac." ECF No. 37-1, p. 413. *See also id.*, p. 162.

Davis was also examined on numerous occasions after his transfer to SCI-Frackville. Because of his continuing medical complaints, several additional diagnostic tests were ordered and performed, including an ultrasound, bone marrow biopsy, flow cytometry, and a molecular study. Each test result was negative and disclosed no new medical concern.

### III. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn from it in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

### IV. Analysis

Davis avers that Defendants acted with deliberate indifference to his medical needs in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To establish a violation of his constitutional right to adequate medical care, Davis must demonstrate that: (1) he had a serious medical need, and (2) prison officials acted or failed to act in a manner that indicates deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists when a "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

It is well-settled, however, that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v.*

*Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009)).

In this case, Davis has failed both to demonstrate that he has a serious medical need or that medical personnel acted with deliberate indifference to his medical concerns. Davis argues that his "health continued to ail without any proper diagnosis," but his medical records negate a plausible finding that any medical condition went undiagnosed or unaddressed. *Id.* Indeed, his allegation that he may have cancer is unsupported by the record. His medical records also negate a finding that his medical needs were serious. As Dr. Miceli, one of the SCI-Frackville medical providers who provided care to Davis, succinctly stated after he examined him on May 12, 2022, "Mr. Davis is fine." ECF No. 37-1, p. 427. Nothing in the record supports a contrary conclusion.

Moreover, the numerous medical examinations, tests, and other diagnostic procedures performed on Davis while he was an inmate at SCI-Forest belie that any Defendant was deliberately indifferent to his medical needs. *See e.g., Payo v. Stechschulte*, 2022 WL 912588, at *7 (W.D. Pa. Mar. 29, 2022) (No deliberate indifference found where it was undisputed that "Plaintiff was seen, evaluated and treated on a regular basis and was prescribed medication as medically needed."); *Gause v. Diguglielmo*, 339 Fed. Appx. 132, 135 (3d Cir. 2009) (Deliberate

7

indifference standard unmet where "[Plaintiff's] medical records show that he was seen many times by the prison medical staff and received medicine, physical therapy, and even treatment outside of the prison," thus establishing that "[Plaintiff] received medical care."). Davis himself details some of these examinations and diagnostic procedures in his complaint, acknowledging that he was seen at least twice by NP Sutherland, who ordered diagnostic tests before concluding that Davis was constipated, and that he received medical attention from NP Leslie and Dr. Maxa, including the ultrasound ordered by Dr. Maxa, which generated negative results. In fact, according to Davis's medical records, Dr. Maxa examined him on at least three occasions, ordered diagnostic tests, reviewed the results of each of these tests, and prescribed treatment for a condition identified during Davis's examinations. Davis also concedes that NP Sutherland prescribed medication for his reported muscle tremors but that he stopped taking the medication because he did not like its side effects.

In summary, the record demonstrate that Davis received extensive medical assessment, treatment, and follow-up care while incarcerated. Although he argues that "SCI Medical Staff has failed to treat [him] properly as he has requested," ECF No. 5, p. 3, such disagreement or dissatisfaction with medical professionals does not support an Eighth Amendment deliberate indifference claim. *See v. Coleman,* 2014 WL 7392400, at *7 (W.D. Pa. Dec. 11, 2014) (citing *Jetter v. Beard,* 130 Fed. Appx. 523, 526 (3d Cir. 2005), *cert. denied,* 546 U.S. 985) (it is well established that an inmate is not "entitled to a particular course of treatment or to have particular tests performed."); *Gause,* 339 Fed. Appx. 132; *Tillery,* 2018 WL 3521212, at *5 (collecting cases).[5]

---

[5] The failure of Davis to show that NP Sutherland, NP Leslie, and Dr. Maxa acted with deliberate indifference to his serious medical needs preclude a Section 1983 claim against Wellpath, their employer, based on any policy, practice, or custom Davis alleges it maintained. *See e.g., Stankowski v. Farley,* 251 Fed. Appx. 743, 748 (3d Cir. 2007) (Because plaintiff could not allege that "the nurses' practice of not distributing bandages until the patient sees

## V. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. A separate judgment order will follow.

DATED this 22nd day of February, 2023

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

---

a doctor" violated the Eighth Amendment, he could not show that the nurses' employer "adopted any policy, custom or practice that caused any constitutional violations").